124 N.J. Super. 203 (1973)
305 A.2d 807
JAMES V. KOCHMAN AND JOHN N. GISH, JR., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS,
v.
KEANSBURG BOARD OF EDUCATION AND PARAMUS BOARD OF EDUCATION, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SCHOOL BOARDS SIMILARLY SITUATED; CARL L. MARBURGER, IN HIS CAPACITY AS COMMISSIONER OF EDUCATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Argued May 29, 1973.
Decided May 31, 1973.
*206 Mr. Edward Carl Broege argued the cause for plaintiffs (Messrs. Ball, Broege, Elwell, Livingston & Roberts, Attorneys; Ms. Anne W. Elwell, on the brief).
Mr. Patrick D. Healy argued the cause for defendant Keansburg Board of Education (Messrs. Healy & Falk, Attorneys).
Mr. Joseph A. Rizzi argued the cause for defendant Paramus Board of Education (Messrs. Winne & Banta, Attorneys).
Mr. Lewis M. Popper, Deputy Attorney General, argued the cause for defendant Carl L. Marburger, Commissioner *207 of Education (Mr. George F. Kugler, Jr., Attorney General, Attorney).
LANE, J.S.C.
This action challenging the constitutionality of N.J.S.A. 18A:16-2 is before the court on final hearing.
N.J.S.A. 18A:16-2 provides:
Every board of education shall require all of its employees, and may require any candidate for employment, to undergo a physical examination, the scope whereof shall be determined under rules of the state board, at least once in every year and may require additional individual psychiatric or physical examinations of any employee, whenever, in the judgment of the board, an employee shows evidence of deviation from normal, physical or mental health.
Any such examination may, if the board so requires, include laboratory tests or fluoroscopic or X-ray procedures for the obtaining of additional diagnostic data.
In considering the validity of that statute the following pertinent sections must be kept in mind:

18A:16-3. Character of examinations

Any such examination may be made by a physician or institution designated by the board, in which case the cost thereof and of all laboratory tests and fluoroscopic or X-ray procedures shall be borne by the board or, at the option of the employee, they may be made by a physician or institution of his own choosing, approved by the board, in which case said examination shall be made at the employee's expense.

18A:16-4. Sick leave; dismissal

If the result of any such examination indicates mental abnormality or communicable disease, the employee shall be ineligible for further service until proof of recovery, satisfactory to the board, is furnished, but if the employee is under contract or has tenure, he may be granted sick leave with compensation as provided by law and shall, upon satisfactory recovery, be permitted to complete the term of his contract, if he is under contract, or be reemployed with the same tenure as he possessed at the time his services were discontinued, if he has tenure, unless his absence shall exceed a period of two years.

18A:16-5. Records of examination

All records and reports relating to any such examination shall be the property of the board and shall be filed with its medical inspector as confidential information but shall be open for inspection by officers of the state department of health and the local board of health.
*208 Plaintiffs contend that the term "deviation from normal * * * mental health" is an all-embracing term which is not limited to a relationship of employment by the board of education and, therefore, the statute is unconstitutional for overbreadth. They further contend that the term "deviation from normal * * * mental health" is not a recognized medical term; that there is no definition or indication of the sort of acts that might constitute such deviation, and that therefore the statute is unconstitutional for vagueness. In addition, it is contended that the statute is an unconstitutional invasion of a teacher's right of privacy. Finally, plaintiffs allege that the statute is invalid because it fails to provide adequate standards to govern the action of the board of education in requiring a psychiatric examination.
A legislative enactment is presumed to be constitutional, and the burden is on the party challenging it to prove otherwise. Jamouneau v. Harner, 16 N.J. 500, 515 (1954). A statute will not be declared invalid unless it is plainly in contravention of a constitutional mandate or prohibition. Even though a statute may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of the court to construe the statute so as to render it constitutional if it is reasonably susceptible of such a construction. State v. Profaci, 56 N.J. 346, 349-350 (1970). If a statute is reasonably appropriate in its overall approach, it will be upheld notwithstanding that it may be invalid in its application in special circumstances or fringe areas. State v. Monteleone, 36 N.J. 93, 99 (1961). Of two interpretations of the language of a statute, the one that renders the act constitutional will be deemed to express the legislative intent. Clifton v. Passaic County Board of Taxation, 28 N.J. 411, 422 (1958). In sum, a legislative act will not be declared void unless its repugnancy to the Constitution is clear beyond a reasonable doubt. Harvey v. Essex County Board of Chosen Freeholders, 30 N.J. 381, 388 (1959).
*209 In construing a statute the court must look to the true intent of the law. In Alexander v. N.J. Power & Light Co., 21 N.J. 373 (1956), the court stated:
The statute is to receive a reasonable construction, to serve the apparent legislative purpose. The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the rationale of the expression. The words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms. The particular words are to be made responsive to the essential principle of the law. When the reason of the regulation is general, though the provision is special, it has a general acceptation. The language is not to be given a rigid interpretation when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the evident legislative design. The will of the lawgiver is to be found, not by a mechanical use of particular words and phrases, according to their actual denotation, but by the exercise of reason and judgment in assessing the expression as a composite whole. The indubitable reason of the legislative terms in the aggregate is not to be sacrificed to scholastic strictness of definition or concept. * * * [at p. 378]
A law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law. Baggett v. Bullitt, 377 U.S. 360, 367, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). To meet the requirements of due process, a law must not be so vague that it leaves the public uncertain as to what conduct it prohibits or leaves judges and jurors free in each particular case to decide without any legally fixed standards what is prohibited and what is not. Giaccio v. State of Pennsylvania, 382 U.S. 399, 402-403, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966). Living under a rule of law entails various suppositions, one of which is that all persons are entitled to be informed as to what the state commands or forbids. Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); Lanzetta v. State of New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939); Laba v. Newark Board of Education, 23 N.J. 364, 385-386 (1957); *210 Handelsman v. Div. of N.J. Real Estate Comm., 101 N.J. Super. 244, 248 (App. Div.), certif. den. 52 N.J. 485 (1968); State v. Caez, 81 N.J. Super. 315, 318-321 (App. Div. 1963).
Vagueness has been found not only in the lack of notice of what the statute commands or forbids but also in the delegation of unfettered discretion to the enforcing authority. See Papachristou v. City of Jacksonville, supra, 405 U.S. at 167, 92 S.Ct. at 846. The statutory standards must be sufficient to guide the enforcing authority. Laba v. Newark Board of Education, supra, 23 N.J. at 385-386.
Even where a statute is found not to be vague by these tests, it may still be considered void for overbreadth if it offends the constitutional principle that a governmental purpose to control or to prevent activities subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade an area of protected freedoms. Cameron v. Johnson, 390 U.S. 611, 616-617, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Zwickler v. Koota, 389 U.S. 241, 250, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). However, the mere fact that a fundamental right is intermingled with the conduct sought to be controlled does not render the regulatory statute overbroad where it is directed toward protecting an important societal interest, i.e., where there is a compelling state interest at stake. To fail for overbreadth, a statute must so regulate conduct that it impinges on a fundamental right in an unnecessarily broad way, that is, beyond the public's need for protection. See Cameron v. Johnson, supra, 390 U.S. at 617, 88 S.Ct. 1335; Cox v. State of Louisiana, 379 U.S. 559, 564, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Anderson v. Sills, 56 N.J. 210, 226-227 (1970); DeStefano v. Wilson, 96 N.J. Super. 592, 602 (Law Div. 1967).
Plaintiffs suggest that in its application the challenged statute impinges on rights of association, expression and privacy. Such rights are clearly fundamental ones, protected *211 by the First Amendment in particular, and by the Bill of Rights and its penumbras as a whole. Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Elfbrandt v. Russell, 384 U.S. 11, 18, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966); Griswold v. State of Connecticut, 381 U.S. 479, 483, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Baggett v. Bullitt, supra, 377 U.S. at 366-370, 84 S.Ct. 1316; Shelton v. Tucker, 364 U.S. 479, 485-486, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). See Hamilton v. N.J. Real Estate Commission, 117 N.J. Super. 345, 347 (App. Div. 1971); DeStefano v. Wilson, supra, 96 N.J. Super. at 597. A statute touching those protected rights must be narrowly drawn to define and punish specific conduct as constituting a clear and present danger to a substantial state interest. Elfbrandt v. Russell, supra, 384 U.S. at 18, 86 S.Ct. 1238; Cantwell v. State of Connecticut, 310 U.S. 296, 311, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Legitimate legislative goals cannot be pursued by means that broadly stifle fundamental personal liberty when the end can be narrowly achieved. Shelton v. Tucker, supra, 364 U.S. at 488, 81 S.Ct. 247. See Keyishian v. Board of Regents of U. of St. of N.Y., 385 U.S. 589, 603-604, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); State v. Caez, supra, 81 N.J. Super. at 318-319. Such state intrusions into constitutionally protected areas including the emerging right of privacy must be founded on a compelling state interest which overrides private rights. Young Women's Christian Ass'n of Princeton, N.J. v. Kugler, 342 F. Supp. 1048, 1072-1073 (D.N.J. 1972).
It is the duty of the court to construe a statute so as to render it constitutional if that can be done. Camarco v. City of Orange, 61 N.J. 463, 466 (1972); Coleman v. Wilson, 123 N.J. Super. 310, 316 (Ch. Div. 1973). Plaintiffs suggest that this judicial principle does not apply to statutes which may violate First Amendment rights. Their suggestion, however, is not warranted. State v. George Brown, 62 N.J. 588 (1973). The term "deviation from normal * * * *212 mental health" as used in N.J.S.A. 18A:16-2 is construed to mean "harmful, significant deviation from mental health affecting the teacher's ability to teach, discipline or associate with children of the age of the children subject to the teacher's control in the school district."
The legislature has delegated to boards of education the authority to determine whether a teacher is fit to teach in general terms. These general terms were held in Laba v. Newark Board of Education, supra, 23 N.J. 364, to provide sufficient standards for application. In N.J.S.A. 18A:16-2 the legislature has delegated to boards of education the power to request a teacher who shows evidence of harmful, significant deviation from normal mental health affecting the teacher's ability to teach, discipline or associate with children of the age of the children subject to the teacher's control in the school district to submit to a psychiatric examination. As this court has construed the statute, it has delineated in as narrow terms as possible another area of unfitness which a teacher may evidence by his behavior. The legislature has, however, recognized that although a board of education may observe signs of what it considers a harmful, significant deviation, it does not have the expertise to question the teacher on the matter itself but must rely on the expertise of a psychiatrist. The grant of power to a board of education to require such an examination is viewed merely as an extension of the board's authority to require a teacher to answer questions at a hearing on general unfitness, held proper in Laba v. Newark Board of Education, supra, 23 N.J. 364. The legislature is concerned with protecting school children from the influence of unfit teachers. Protection of school children from teachers who have shown evidence of harmful, significant deviation from normal mental health is without question not only a valid legislative concern but one classifiable as a compelling state interest. This being so, the fact that the statute may intrude upon a teacher's rights of association, expression and privacy does not render it unconstitutional. As interpreted by this court, the *213 statute contains sufficient standards to guide the board's action and also offers individual teachers a sufficient indication of what behavior may result in board action.
Plaintiffs have implied that the statute deprives them of due process because it contains no right to a hearing before an examination is ordered. A directive dated February 2, 1972 from the Assistant Commissioner of Education to all County Superintendents states:
N.J.S.A. 18A:16-2 permits a board of education to require individual psychiatric or physical examination of any employee, whenever, in the judgment of the board, an employee shows evidence of deviation from normal physical (communicable disease) or mental health.
It is important that boards be advised, when necessary, that this statute is construed to mean that any individual of whom such an examination is required should be given the reason or reasons therefore by the board and also the right to be heard by the board before the statute is applied.
Before a teacher is ordered to submit to a psychiatric examination, he is entitled to a statement of the reasons for such examination, cf., Monks v. N.J. State Parole Board, 58 N.J. 238, 249-250 (1971), and to a hearing, if requested, cf., Williams v. Sills, 55 N.J. 178, 186 (1970); R.R. v. Bd. of Ed., Shore Reg. H.S., 109 N.J. Super. 337, 347-348 (Ch. Div. 1970). The procedure prescribed in the directive if followed would provide adequate due process to teachers. However, the directive is precatory and not mandatory in its terms. The requirement of a statement of reasons and a hearing, if requested, is constitutionally mandated.
N.J.S.A. 18A:16-2 is constitutional. However, when a board of education intends to resort to it and requires a psychiatric examination, it must give to the teacher a statement of its reasons and must afford the teacher a hearing, if requested. It is conceded by the Commissioner that a teacher would have a right to appeal to him from an order for a psychiatric examination under N.J.S.A. 18A:6-9 and thereafter to appeal from an adverse decision by *214 him to the State Board of Education under N.J.S.A. 18A:6-27. With such procedural safeguards the application of N.J.S.A. 18A:16-2 will not violate due process.
The statute having been construed and held constitutional and the procedure to be followed having been delineated, the validity of the orders affecting the plaintiffs will be determined by the Commissioner of Education as stipulated in the pretrial order.